UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN THE MATTER OF: HANSON
MARINE PROPERTIES, INC.,
d/b/a Salty Sam's Marina, as the
owner of a 2017 26' Beachcat,
Hull Identification Number:
BHT423BCE717, Petitioner.

Case No.: 2:20-cv-958-SPC-KCD

_____/

# OPINION AND ORDER[1]

Before the Court is Cross-Plaintiff Kayley Prinzi's *Daubert*[2] Motion (Doc. 186) and Cross-Defendant Kevin Hyma's response in opposition (Doc. 193). Because the Court writes only for the parties (who are familiar with the facts), it includes only those necessary to explain the decision.

## BACKGROUND

This case is about a regrettable boating accident. Prinzi was on a pontoon-like boat operated by Hyma when she fell overboard. The propeller blade struck Prinzi, causing injuries including the amputation of her right leg. On the morning of the accident, Prinzi took antidepressant medicine. She later

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

consumed alcohol while on the boating trip, although the parties dispute Prinzi's blood alcohol content ("BAC") and its effects on Prinzi.

In defense of this suit, Hyma retained Dr. Christopher Borgert, a toxicologist and pharmacologist, to testify about (1) Prinzi's BAC and the impact of such a BAC on her faculties at the time of her fall, and (2) whether Prinzi's consumption of alcohol caused or contributed to the accident. Borgert's testimony is at issue.

## LEGAL STANDARD

It well established that a witness who is qualified as an expert may testify with an opinion if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial judge serves as a gatekeeper—ensuring evidence is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

In determining the admissibility of expert testimony, the Court engages in a "rigorous" three-part inquiry. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). It must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his

> conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (citation omitted). Though there is overlap among the inquiries, these are "distinct concepts and the courts must take care not to conflate them." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 851 (11th Cir. 2021) (citation omitted). The proponent of expert testimony always bears the burden on admissibility. *Frazier*, 387 F.3d at 1244.

The primary danger of unreliable expert testimony—the jury will be unduly influenced—is not implicated in a bench trial like here. *See United States v. Brown*, 415 F.3d 1257, 1268-69 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). As factfinder at a bench trial, the judge can "disregard what she thinks she should not have heard, or to discount it for practical and sensible reasons." *T.T. Int'l Co. v. BMP Int'l, Inc.*, No. 8:19-CV-2044-CEH-AEP, 2022 WL 843588, at *4 (M.D. Fla. Mar. 22, 2022) (cleaned up); *see also GLF Constr. Corp. v. Fedcon Joint Venture*, No. 8:17-CV-1932-T-36AAS, 2019 WL 13168545, at *5 (M.D. Fla. Oct. 16, 2019).

## DISCUSSION

Borgert offers two areas of testimony that are related but should not be conflated. First, Borgert seeks to testify about Prinzi's BAC and its impact on her faculties at the time of her fall. Prinzi doesn't directly challenge this testimony. (Doc. 186; Doc. 193 at 8, 10). Yet Hyma focuses his Response on it. *See, e.g.,* (Doc. 193 at 7) ("Borgert is qualified to testify competently regarding Prinzi's BAC and the effects thereof."); (Doc. 193 at 9) ("[N]or does he need to be to provide an opinion regarding the effect of Prinzi's BAC on human faculties."); (Doc. 193 at 10) (classifying Borgert's central conclusion as "Prinzi's BAC was more than twice the legal limit at the time of the accident"); (Doc. 193 at 10-11) ("Borgert utilized methodology that is scientifically testable…regarding assessment of Prinzi's BAC and the effects of that BAC on her physical and cognitive faculties."). Because Hyma dedicates pages to saving this testimony, the Court will weigh in on it.

Prinzi doesn't challenge—nor should she—Borgert's ability to testify about Prinzi's BAC and its impact on her faculties. As a pharmacologist and toxicologist with more than twenty-five years' experience (Doc. 186-1 at 1), he is qualified to testify about these issues and Prinzi does not raise substantive methodological issues with such testimony. The Court finds Borgert's testimony on Prinzi's BAC and any resulting effects on her faculties will be helpful in determining the cause(s) of Prinzi's fall. *Roberts v. Mitchell*, No.

4

3:20CV751-TKW-EMT, 2021 WL 2099306, at *5 (N.D. Fla. Mar. 31, 2021) (finding a toxicologist's testimony helpful on the general effects and impairments associated with a BAC when an accident occurred); *Broberg v. Carnival Corp.*, No. 17-CV-21537, 2018 WL 4778457, at *3 (S.D. Fla. June 11, 2018), *report and recommendation adopted*, No. 17-21537-CIV, 2018 WL 4776386 (S.D. Fla. July 3, 2018) (finding a toxicologist's testimony helpful as to BAC and manifestations of that BAC when a woman fell off a ship). Therefore, such testimony is admissible.

Prinzi's true attack focuses on a second area of Borgert's testimony: his opinion that Prinzi's alcohol consumption caused, or contributed to, Prinzi's fall. Prinzi argues Borgert is not qualified to testify to this, his methodology for drawing such conclusions is unreliable, and such testimony will not help the Court. Prinzi's main issue with the testimony is that Borgert does not possess expertise in other possible causes of Prinzi's fall like boating, seamanship, weight distribution effects on a vessel, weather, etc. Even under the other prongs of methodology and helpfulness, Prinzi circles back to Borgert's inability to testify about causation given his qualifications and failure to evaluate other possible causes.

The Court agrees with Prinzi and will limit Borgert's testimony in this second area. Borgert admittedly is not a maritime or boating expert. (Doc. 186-2 at 65:10-13, 69:14-22). His expertise is the effect of drugs and chemicals

on the body and the body's effect on drugs and chemicals (Doc. 186-1 at 1; Doc. 186-2 at 67:17-22). In determining whether Borgert may testify to causation, the Court finds it instructive to consider the standard for expert causation testimony in toxicity cases. Like Borgert, experts in toxicity cases often seek to testify that a substance was the specific cause of an injury. In those cases, an expert must at least consider other factors that could have been the sole cause of the injury. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1309 (11th Cir. 2014) (citing *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010)).

That standard is similar here because determining the cause(s) of Prinzi's fall involves considering all possible causes, including, but not limited to, any effect of drugs and alcohol and boating conditions and performance. Without an expertise in other possible causes of Prinzi's fall, Borgert cannot properly evaluate them. Nor did he evaluate them. (Doc. 186-2 at 82:25-83:11). Thus, Borgert may not testify that Prinzi's alcohol and drug consumption, or its effects, caused or contributed to Prinzi's fall. And based on his lack of maritime and boating qualifications, Borgert may not testify about which faculties are necessary for boating. It's the Court's job to consider the possible causes of Prinzi's fall at the bench trial, including Borgert's testimony on Prinzi's BAC and its effects, and decide.

Two final points. It is common knowledge that balance, for example, is necessary when one is on a boat since a boat sits on moving water and not on stable land. Likewise, any testimony about the prevalence of alcohol generally in boating accidents or injuries is common and unhelpful here. The Court must determine the cause of Prinzi's fall in this specific case. And the general negative effects of alcohol consumption on a person operating or aboard a motorized vehicle are common knowledge.

For the above reasons, Borgert may testify to Prinzi's BAC and its effects on her faculties. But he may not testify (1) that Prinzi's alcohol consumption, or its effects, caused or contributed to her fall; (2) which faculties are necessary for boating; and (3) the general prevalence of alcohol in boating accidents and injuries.

Accordingly, it is now **ORDERED:**

Cross-Plaintiff's *Daubert* Motion to Strike or Limit Cross-Defendant's Toxicologist, Christopher Borgert (Doc. 186) is **GRANTED and DENIED in part**.

**DONE** and **ORDERED** in Fort Myers, Florida on August 29, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record